Appellant. Mr. English for the Appellant. Mr. Sabolt for the Appellant. Good morning. May it please the Court, my name is Greg English and I've been appointed by this Court to represent Mr. Boyd on appeal. I'd like to start by conceding that in this case of Jackson v. Virginia and its progeny, this Court is required to construe the evidence and the like most favorable to the prosecution. We respectfully submit that notwithstanding this high burden, the evidence is nevertheless insufficient to sustain the conviction. Can you pull your lectern up a little bit? Just use the thing on your right button. Thank you, Your Honor. Do you think I would be old enough by now to know how to operate this? Thank you, sir. The facts in this case are very simple and largely uncontroverted. On October 13, 2012, officers of the Metropolitan Police Department executed a search warrant in an apartment where my client lived with Yolanda Harrison and her family, two brothers ages 17 and 25, her children, her sister who lived there sometimes, and her uncle, Marcus Herbert, who was in his 30s. The apartment itself was leased by her mother. When the police executed the search warrant, they found ammunition in a blue bag inside of another blue bag. The detective who testified about executing the search warrant said that the ammunition was found in the bedroom that Ms. Harrison and her children shared with my client. When Ms. Harrison testified under a grant of immunity, she said that the room contained some materials belonging to her sister, who wasn't there at the time. She also said other people lived there in the apartment who stored things in the closet there. What about, the government points out in its brief, it relies on Harston's testimony before the grand jury. She's asked, what was in the blue bag? And she answers, bullets. And then the next question is, and who did that blue bag belong to? And the answer is, Leon Boyd. Your Honor, she was impeached at trial with her testimony before the grand jury. Since that testimony was under oath, the jury was entitled to believe it. Wasn't the grand jury testimony under oath? Yes, sir. The grand jury testimony under oath, and when she was impeached with it, before the... So the jury had two different versions of her testimony, right? Yes, sir, Your Honor. Doesn't that make your argument, your sufficiency of the evidence argument, quite difficult? Well, Your Honor, yes, but I believe she didn't, she said that the bag belonged to my client, but she didn't say that the bullets did. She said she didn't know the bullets were there, she'd never seen my client handle any bullets. And Your Honor, we admit, for the purpose of this appeal, that construing the evidence in the light most favorable to the prosecution, the court has to conclude that the bag itself belonged to my client. I can't in good faith dispute that, Your Honor. But having said that, I respectfully submit, that's not the end of the inquiry, Your Honor. There is an absolute lack of direct evidence in this case linking my client to the bullets that were seized. There was no evidence from anyone that said they'd ever seen him with bullets or put the bullets there. Moreover, there was no physical evidence. There was no DNA, there were no fingerprints in the case. And there's one bit of exculpatory evidence. When he was questioned by the police, he was in a room with a recording device. He did not know that the conversations were being recorded. The police officers lent him a phone and he called home to Ms. Hairston. The conversation was played for the jury. In that conversation, he mentions the blue bag and he mentions Herb, her uncle, Your Honor, and he talks about a watch in the bag. He does not say a single thing about any ammunition. So here he is talking to his girlfriend, who's pregnant by him at the time, who he lives with, not knowing that anyone else is listening to it. And when he mentions the bag, Your Honor, he's talking about a watch in the bag. Conspicuously absent is any mention whatsoever of any ammunition. Your Honor, the other thing is... Mr. English, this is not a case in which there was more than one bag recovered, one of which had a watch and another of which had the ammunition. This was the only inculpatory evidence recovered from that room, is that right? Yes, Your Honor. Ms. Hairston testified there was another piece of luggage in the room that was blue, but it was not recovered by the police. Why might that be relevant? I'm not sure about your theory of why it helps your client that there was the luggage that was blue. I'm just trying to be precise, Your Honor. When he was talking about blue bags, she actually said that when she referred to the blue bag belonging to my client, she meant the other bag that her mother had given him. But this Court's required to construe the evidence to the light most favorable to the prosecution, and so we're not disputing that the bag that was seized, you know, with the ammunition in it belonged to him. But the other thing that we think is fairly remarkable about this case is that Mr. Herberger-Runkle, who's in the 30s, obstructed the police when they came to execute the search warrant. He held the door, he didn't want to let them in. That gave an opportunity for the officer at the door to go take it and put it in a bag they knew belonged to my client, Your Honor. That my client was not present at the house. He'd been arrested by the police by the day before. He was still in custody. There were three other males in the house, ages 17, 25, Mr. Herberger, and his 30s. It's equally plausible that when the police came, whoever really owned the ammunition took it and put it into that bag, which the police found when they got there. Your Honor, this case is basically a jump ball in terms of construing the evidence of who actually owned the ammunition. My client is serving 10 years in a federal penitentiary because of this case, without sufficient evidence to prove that he's the one that actually owned the ammunition. We respectfully submit that in America, that's unconscionable, Your Honor. We ask the court to set aside the conviction. Thank you. Thank you. May it please the court, good morning. David Sable on behalf of the United States. Three pieces of evidence illustrate that the evidence was sufficient to convict the appellant of possessing the ammunition constructively. First, it was uncontroverted at trial that he lived in the apartment, he lived in the bedroom, he kept his things in the bedroom. Even though the bedroom was shared with his girlfriend and a five and seven year old child, it's permissible for the jury to infer from that fact that he constructively possessed the property found in the room. Second, his girlfriend, Yolanda Hairston, said in the grand jury, as Judge Tatel just recounted, that the blue bag with the ammunition belonged to Mr. Boyd. From that, the jury could infer, of course, that the ammunition inside the blue bag belonged to the appellant. And third, in a call that was recorded from the interview room, where he had been arrested for another crime, he asked his girlfriend, and she admitted that that was her on the phone, to get her uncle, Herb, who's the other gentleman that was present in the apartment at the time, to do something with a piece of luggage, a timepiece, and a blue bag. And Detective Stargill testified that the timepiece and the piece of luggage had to do with the crime for which he had been arrested, but that the blue bag did not. And so a juror could reasonably infer that the appellant was instructing his girlfriend to have Herb get rid of all the contraband in the room in anticipation of a search warrant. Detective Stargill had said this was the kind of case where a search warrant is frequent after this kind of arrest. And so he would be telling her to get rid of the two pieces of items, the two items related to the arrest, and the other piece of contraband that he also knew was there. And on strength of those three facts, viewing the evidence in the light most favorable to the government, there was sufficient evidence of constructive possession. Now, as far as we know, the police did not recover timepiece and luggage, but only blue bag? There was no evidence either way of that, Your Honor. Oh, okay. And on your first point, you said it's uncontroverted, they lived there in the bedroom and kept his things there. Indeed, don't we have grand jury testimony from Harrison that was used on impeachment that only the defendant's things were in the room, that everything in the room was the defendant's? I know later at trial she testified otherwise, but wasn't there an impeachment on that as well? She said in the grand jury that everything in the closet was his, and the blue gym bag was found either in the closet or right next to it. The officer that found it couldn't quite remember where it was found. And then at trial, she did say that her sister, who was in the closet, and there were some women's clothes in the closet. But there was no evidence that anybody else kept property there other than the sister. For example, the two older brothers that also lived there, they had access to the room, but there was no evidence at all that they actually had property there. And of course, the jury was also instructed on the principles of constructive as well as joint possession. So it was certainly reasonable for a juror to infer that appellant did possess that. Was there any evidence to support the theory that Mr. English was just putting forth that other people present in the apartment who weren't keeping things there might have put something there in anticipation of the police entry and search warrant? No, Your Honor. And that theory is articulated now for the first time. That was not articulated at trial. The theory articulated at trial was that the girlfriend didn't understand whatever the appellant was telling him from the lockup, and that she didn't do anything, and that if he was referring to something, he was referring to the light blue piece of suitcase and not to the blue gym bag. And clearly, the jury disregarded that interpretation. And that suitcase wasn't seized either? Or we don't know one or the other? No, it wasn't seized because nobody thought it was relevant to anything at the time. There was a picture of it. The government put in evidence pictures of the room, and so this became a focus of the defense case at trial. If there's nothing further, we'd ask the government. I'm sorry, Your Honor. Thank you very much. Thank you. Mr. English, you have little time left. Your Honor, I believe I've said everything I have to say. I'd be happy to take any questions if the Court has any. Okay, well, thank you. You were appointed by the Court to represent the appellant, and we are grateful to you for your assistance. Thank you, Your Honor. I always enjoy these cases, and I'm grateful for the opportunity to be here.
judges: Tatel, Pillard, Edwards